**Anthony J. ANSELMO et al., Appellants,**

**v.**

**Stephen AILES, Secretary of the Army, Department of the Army, and the United States Civil Service Commission, Appellees.**

**No. 372, Docket 29428.**

United States Court of Appeals
Second Circuit.

Argued March 11, 1965.

Decided April 19, 1965.

---

1. "A majority of the members of the Commission constitutes a quorum for the transaction of business." 16 C.F.R. 1.7.

608

Samuel Resnicoff, New York City, for appellants.

David L. Rose, Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Morton Hollander and Florence Wagman Roisman, Dept. of Justice, Washington, D. C. and Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, on the brief), for appellees.

Before SMITH and MARSHALL, Circuit Judges, and DOOLING, District Judge.*

SMITH, Circuit Judge:

On April 5, 1962, each of the appellants was suspended from his technician position with the New York Army National Guard without pay. On April 26, 1962, they were notified of a hearing, which was held at a Guard Armory in Brooklyn on April 29, 1962. They subsequently were separated from their technician positions by the commanding officer of 1st Missile Battalion, 244th Artillery, New York Army National Guard. They were advised orally of their dismissal on May 28, 1962. They did not receive any official communication in writing from the United States Department of the Army advising them of their dismissal.

The thirteen appellants, dismissed as aforesaid as technicians employed at a Long Island missile base manned by the New York Army National Guard, appealed their dismissals to the Regional Director, Second United States Civil Service Region, who held them not federal employees. The Civil Service Commission Board of Appeals and Review affirmed the decision. They were then unsuccessful in an attempt to obtain review of their dismissal in the courts of the State of New York, which in Anselmo v. Rockefeller, 19 A.D.2d 761 (3rd Dept. 1963), 241 N.Y.S.2d 761, leave to appeal denied 13 N.Y.2d 599, 245 N.Y.S.2d 1026, 194 N.E.2d 837, held that they were not covered by New York civil service statutes.

After the unsuccessful attempt in the New York courts, action was brought in the United States District Court for the Eastern District of New York against the Secretary of the Army, the Department of the Army, and the United States Civil Service Commission, in the nature of mandamus, seeking reinstatement. On cross motions for summary judgment, the Court, George Rosling, District Judge, entered the order dismissing the action, Anselmo v. Ailes, 235 F.Supp. 203, from which the instant appeal was taken. We find no error and affirm the dismissal of the action.

Appellants contend here that they are federal employees entitled to the protection of 5 U.S.C. § 652[1] and § 863,[2] as

* Sitting by designation.

1. 5 U.S.C. § 652 provides that no person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service and for reasons given in writing. It provides procedure for answer and written decision.

2. 5 U.S.C. § 863 provides against discharge of permanent or indefinite preference eligibles except for cause on specified notice in writing, with procedure for answer, written decision and appeal to the Civil Service Commission.

members of the civil service, and in the case of nine of their number, the Veteran's Preference protections. Concededly these provisions, if applicable, have not been followed.

The argument is made that since they have been held not to be state employees, and their positions are authorized, their functions and training prescribed and money provided for their pay by Federal law, 32 U.S.C. § 709,[3] they must be held federal employees. They point out that the Congress has recognized that they are federal employees so far as a somewhat limited tort responsibility for damages from their actions while on duty is concerned, 32 U.S.C. § 715,[4] and that

3. 32 U.S.C. § 709. "Caretakers and clerks

"(a) Under such regulations as the Secretary of the Army may prescribe, funds allotted by him for the Army National Guard may be spent for the compensation of competent persons to care for material, armament, and equipment of the Army National Guard. Under such regulations as the Secretary of the Air Force may prescribe, funds allotted by him for the Air National Guard may be spent for the compensation of competent persons to care for material, armament, and equipment of the Air National Guard. A caretaker employed under this subsection may also perform clerical duties incidental to his employment and other duties that do not interfere with the performance of his duties as caretaker.

"(b) Enlisted members of the National Guard and civilians may be employed as caretakers under this section. However, if a unit has more than one caretaker, one of them must be an enlisted member. Compensation under this section is in addition to compensation otherwise provided for a member of the National Guard.

"(c) Under regulations to be prescribed by the Secretary concerned, material, armament, and equipment of the Army National Guard or Air National Guard of a State or Territory, Puerto Rico, the Canal Zone, or the District of Columbia may be placed in a common pool for care, maintenance, and storage. Not more than 15 caretakers may be employed for each of those pools.

"(d) Under regulations to be prescribed by the Secretary concerned, one commissioned officer of the National Guard in a grade below major may be employed for each pool set up under subsection (c) and for each squadron of the Air National Guard. Commissioned officers may not be otherwise employed under this section.

"(e) Funds appropriated by Congress for the National Guard are in addition to funds appropriated by the several States and Territories, Puerto Rico, the Canal Zone, and the District of Columbia for the National Guard, and are available for the hire of caretakers and clerks.

"(f) The Secretary concerned shall fix the salaries of clerks and caretakers authorized to be employed under this section, and shall designate the person to employ them. Compensation authorized under this section may include the amounts of the employer's contributions to retirement systems. Such contributions shall not exceed 6½ per centum of the compensation on which such contributions are based."

4. 32 U.S.C. § 715. "Property loss; personal injury or death: activities under certain sections of this title

"(a) Under such regulations as the Secretary of the Army or Secretary of the Air Force may prescribe, he or, subject to appeal to him, the Judge Advocate General of the armed force under his jurisdiction, if designated by him, may settle, and pay in an amount not more than $5,000 a claim against the United States for—

"(1) damage to, or loss of, real property, including damage or loss incident to use and occupancy;

"(2) damage to, or loss of, personal property, including property bailed to the United States or the National Guard and including registered or insured mail damaged, lost, or destroyed by a criminal act while in the possession of the National Guard; or

"(3) personal injury or death; either caused by a member of the Army National Guard or the Air National Guard, as the case may be, while engaged in training or duty under section 316, 502, 503, 504, or 505 of this title or any other provision of law for which he is entitled to pay under section 206 of title 37, or for which he has waived that pay, and acting within the scope of his employment; caused by a person employed under section 709 of this title acting within the scope of his employment; or otherwise incident to noncombat activities of the Army National Guard or the Air National Guard, as the case may be, under one of those sections.

courts have held them to be federal employees.[5] These arguments are persuasive that for some purposes at least they should be considered federal employees. This does not, however, supply the answer to our problem, which is whether the protections of the Civil Service and Veteran's Preference provisions on separation from employment are applicable to these appellants. From their standpoint, of course, such application would be desirable. But the provisions for their employment and direct supervision by state officers, militate against any intent to include them in the classified or unclassified civil service or otherwise protected federal employment. The state adjutants general—in the case of New York, the Chief of Staff to the Governor—are given unrestricted power to hire and fire within the prescribed standards. National Guard Regulation No. 51, ¶ 3, July 1961.

The Congress, in the National Defense Act of 1916, 39 Stat. 166, first provided for the so-called "caretakers" whose functions have been broadened to include these technicians. Enlisted personnel of the National Guard are eligible for employment as such technicians, and under National Guard Regulations the authority to discharge enlisted personnel from the Army National Guard rests with the state. 32 U.S.C.App. § 564.18(c). This is consistent with the basic constitutional scheme providing a state militia available both for national and state purposes,

"(b) A claim may be allowed under subsection (a) only if—
"(1) it is presented in writing within two years after it accrues, except that if the claim accrues in time of war or armed conflict or if such a war or armed conflict intervenes within two years after it accrues, and if good cause is shown, the claim may be presented not later than two years after the war or armed conflict is terminated;
"(2) it is not covered by section 2734 of title 10 or section 2672 of title 28;
"(3) it is not for personal injury or death of such a member or a person employed under section 709 of this title, whose injury or death is incident to his service;
"(4) the damage to, or loss of, property, or the personal injury or death, was not caused wholly or partly by a negligent or wrongful act of the claimant, his agent, or his employee; and
"(5) it is substantiated as prescribed in regulations of the Secretary concerned.
For the purposes of clause (1), the dates of the beginning and end of an armed conflict are the dates established by concurrent resolution of Congress or by a determination of the President.
"(c) Payment may not be made under this section for reimbursement for medical, hospital, or burial services furnished at the expense of the United States or of any State or the District of Columbia or Puerto Rico.
"(d) If the Secretary of the military department concerned considers that a claim in excess of $5,000 is meritorious and would otherwise be covered by this section, he may pay the claimant $5,000 and report the excess to Congress for its consideration.
"(e) Except as provided in subsection (d), no claim may be paid under this section unless the amount tendered is accepted by the claimant in full satisfaction.
"(f) In any case where the amount to be paid is not more than $1,000, the authority contained in subsection (a) may be delegated to any officer of the Army or the Air Force, as the case may be, who has been delegated authority under section 2733(g) of title 10 to settle similar claims.
"(g) Notwithstanding any other provision of law, the settlement of a claim under this section is final and conclusive.
"(h) In this section, 'settle' means consider, ascertain, adjust, determine, and dispose of a claim, whether by full or partial allowance or disallowance."

5. United States v. Holly, 192 F.2d 221, 10 Cir. 1951 (Tort Claims Act);
State of Maryland for Use of Levin v. United States, 200 F.Supp. 475, W.D.Pa. 1961 (Tort Claims Act) reversed and remanded 329 F.2d 722, 3 Cir. 1964, cert. granted 379 U.S. 877, 85 S.Ct. 149, 13 L.Ed.2d 85 (1964);
Courtney v. United States, 230 F.2d 112, 57 A.L.R.2d 1444, 61 Wash.2d 708, 2 Cir. 1956 (Tort Claims Act);
Washington State National Guard v. Washington State Personnel Board, et al., 61 Wash.2d 708, 379 P.2d 1002, Supreme Court, Washington, 1963 (State Civil Service Review of Discharge);
Anselmo v. Rockefeller, supra (State Civil Service Review of Discharge).

U.S.Const. Art. 1, Sec. 8, clauses 15 and 16, and with the scheme of the National Defense Act as developed in this century giving a dual status to members of the Guard as state militia and as members of a reserve component of the national army under U.S.Const. Art. 1, Sec. 8, clause 12. See State of Maryland for Use of Levin v. United States, 329 F.2d 722, 724–726, 3 Cir. 1964. While the Congress chose to treat the technicians as civilians not on active military duty, it apparently elected to integrate their employment with their National Guard dual status. They have a dual function in that they handle federal equipment in possession of the states, but are appointed and discharged by a state officer designated by the Secretary of the Army, with no federal veto over specific individual hiring and firing except through recognition or non-recognition of the unit as a whole. In view of their dual status, any protection which the Congress might desire to provide by way of review of discharge would require careful dovetailing into this federal-state scheme. The natural place for any such provision would be in the caretaker statute itself, but no provision is there included. Any decision so to include it involves a matter of policy best left for Congressional determination.

We think it unlikely that the Congress ever intended that these men, even though federal employees in some sense, should be considered either members of "the classified civil service" or "permanent or indefinite eligibles." It would be quite inconsistent with the statutory scheme of determination of individual qualifications, appointment, and discharge by state officials to provide federal Civil Service Commission or federal court review of discharge. Were federal standards of appointment, applied by the Commission in the first instance, provided in the caretaker statute there would be a stronger argument for appellants here. In the present scheme, however, we cannot find that any federal review of the individual discharges was contemplated. The New York court in its opinion in Anselmo v. Rockefeller, supra, appears to recognize that even if the appellants be considered New York state employees, they would not come under New York Civil Service law since they are members of the New York organized militia. We likewise are of the opinion that these technicians, members of the New York National Guard employed as civilian "caretakers" do not come under the appointment and discharge provisions of the federal Civil Service law.

The judgment dismissing the action is affirmed.